UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ZHONGSAI XU,

                        Plaintiff,

       -against-

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT,
and CARLOS, *Queens Brai B'rith House Dev
Manager*,

                       Defendants.
--------------------------------------------------------X

**REPORT AND RECOMMENDATION
22 CV 3539 (KAM)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff Zhongsai Xu, proceeding *pro se*, brings this action against defendants United States Department of Housing and Urban Development ("HUD") and "Carlos, Queens Brai B'rith House Dev Manager," alleging, *inter alia*, that defendants increased plaintiff's rent in violation of a "national policy" and violated his constitutional due process rights under the Fifth Amendment. Defendant HUD moves to dismiss plaintiff's claims for lack of jurisdiction, failure to state a claim, and failure to timely effect service on defendant pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 4(m) ("Fed. R. Civ. P."). The Honorable Kiyo Matsumoto referred defendant's motion to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendant's motion should be granted, and plaintiff's claims should be dismissed without prejudice for lack of subject matter jurisdiction.

## BACKGROUND

For the purposes of defendant's motion to dismiss, all well-pleaded allegations in plaintiff's complaint are taken as true and all inferences are drawn in plaintiff's favor.[1] Plf.'s Complaint ("Compl.") [ECF No. 1].

---

[1] The Court also considers documents attached to or incorporated by reference in the complaint, <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007) (concluding that on a 12(b)(6) motion, the court may consider any document

I.    Plaintiff's Allegations

In June 2015, plaintiff filed an application[2] that included an Owner's Certification of Compliance with HUD's Tenant and Eligibility and Rent Procedures ("Owner's Certification")[3] form. Plf.'s Opp. at 2 [ECF No. 25]. In April 2017, plaintiff received "personal occupancy qualification" and was approved for rent-subsidized elderly housing shortly thereafter. Id. Around that time, plaintiff moved into an apartment in the B'nai B'rith House[4] ("BBH"), a senior residence home in Flushing, Queens. Compl. at 8. BBH is owned by the Queens B'nai B'rith Housing Development Fund Company, Inc. ("HDFC"). Declaration of Louis J. Gioia ("Gioia Decl.") ¶ 5 [ECF No. 29-2]. When plaintiff first moved in, his rent was around $688 per month, or roughly one third of his monthly income. Compl. at 8, 14.

In March 2019, plaintiff alleges that defendant Carlos, the office manager of BBH, told plaintiff to either pay an increased rent of approximately $1,521 per month or to "move out of" BBH. Id. at 4, 8; Plf.'s Opp. at 5–6. "Anxious to take care of [his] dying mother" at that time, plaintiff signed a "letter" that he did not understand, because he does not speak or read English, but that he believes authorized an increase in his rent to "market" rate. Compl. at 8. Attached to plaintiff's complaint is an Owner's Certification form with plaintiff's signature dated March 21, 2019. Id. at 15. The form states that plaintiff was to pay "market rent" because plaintiff "[d]id not re-certify on time." Id. Plaintiff alleges that his rent increased sometime after he began reporting to the government that he received a monthly pension from China. Plf.'s Opp. at 3.

_____

"attached to the complaint or incorporated by reference" or "upon which the complaint *solely* relies and which is *integral* to the complaint…." (emphasis in original) (citations omitted)), and factual allegations made in plaintiff's papers opposing the motion. See, e.g., Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (considering "further" allegations made in *pro se* plaintiff's affidavit in opposition to defendants' motion to dismiss).

[2] Plaintiff does not allege with whom he filed his application.

[3] Plaintiff states that he "filled out…[t]he form HUD-50059 A issued by…HUD." Plf.'s Opp. at 2. Form HUD-50059 A is titled, "Owner's Certification of Complaint with HUD's Tenant Eligibility and Rent Procedures," and appears to be the same form that plaintiff signed in March 2019, which is attached to the complaint. Plf.'s Opp. at 1; Compl. at 15.

[4] Plaintiff misspells the apartment residence as "Brai B'rith" in his complaint and opposition papers.

2

In September 2020, plaintiff alleges that the government "granted" him one year of rent relief, or around $18,000. Compl. at 8; Plf.'s Opp. at 5. Attached to plaintiff's complaint is a letter from the New York Office of Temporary and Disability Assistance[5] notifying plaintiff that he was provisionally approved for an Emergency Rental Assistance Program ("ERAP") payment covering up to 12 months of rental arrears. Compl. at 16. Despite this assistance, plaintiff's "landlord" has continued to charge him "full rent" of $1,521 per month. Id. at 8.

Plaintiff alleges that there is a "national policy" under Section 202 of the Housing Act of 1959 ("Section 202") that requires that residents of "elderly housing" pay one-third of their income in rent. Id. at 12; Plf.'s Opp. at 2–3. Plaintiff alleges that his monthly income is around $2,000, and that pursuant to this policy, his rent should be between $600 and $700 per month.[6] Compl. at 6. Plaintiff alleges that his landlord and HUD have violated this policy and his Fifth Amendment due process rights by charging him rent above one-third of his income. Id. at 8. Plaintiff also alleges that defendant Carlos exploited him and committed a "serious crime of defrauding the elderly" by collecting his rent at "market price." Plf.'s Opp. at 5–6. Plaintiff alleges that Carlos and HUD's actions are a "criminal law issue that seriously offends *non bis in idem*." Compl. at 2. Plaintiff seeks relief in the form of a reduction in his monthly rent to "around $600-$700." Compl. at 6.

II.     HUD's Section 202 Program & HDFC

Section 202 provides direct loans to finance the development and availability of low-income elderly housing. Gioia Decl. ¶¶ 3–4. In 1983, HUD provided a Section 202 direct loan to HDFC to fund the construction of BBH, the building where plaintiff lives. Gioia Decl. ¶ 4. In 2012, HDFC prepaid the loan and contemporaneously signed a "Section 202 Use Agreement" that

---

[5] The New York Office of Temporary and Disability Assistance is a New York State agency.

[6] Plaintiff alleges that he earns $800 per month as a teacher and receives a monthly pension of approximately $1,300 from China. Compl. at 10. However, plaintiff also alleges rather confusingly that he is not required to report his pension to the United States government, and thus any pension he reported in the past should not have effected a rent increase. Plf.'s Opp. at 3.

detailed the terms of HDFC's relationship with HUD. Gioia Decl., Ex. A, Section 202 Use Agreement ("Use Agreement") ¶¶ 1, 6–7 [ECF No. 29-3]. Under the Use Agreement, HDFC promised to maintain BBH "solely as rental housing for" low-income elderly or disabled persons and to comply with all terms required by its original direct loan agreement with HUD and all applicable federal regulations through at least July 1, 2023. Id. HDFC also assumed responsibility for determining the appropriate rent for each tenant, working with tenants to certify their income and eligibility for rental assistance, and collecting rent. Gioia Decl. ¶ 8.

In certifying a tenant's income and eligibility, HDFC agreed to obtain a certification of income from each prospective tenant of BBH and a "recertification" of income each year thereafter, to examine the income information provided for the purposes of determining a tenant's appropriate rent, and to make any adjustments to the tenant's total rent payment. Id.; Use Agreement ¶¶ 12–13. Federal regulation provides that a landlord (in this case HDFC) may terminate a tenant's rental assistance if the landlord provides proper notice, but the tenant fails to certify their income by the annual deadline. Gioia Decl. ¶ 8; 24 C.F.R. § 891.610(g)(3)(ii) (A tenant's "eligibility for housing assistance payments may be terminated in accordance with HUD requirements for such reasons as failure to submit requested verification information…").

III.    Procedural History

Plaintiff commenced this *pro se* action by filing a complaint against defendants on May 25, 2022.[7]  ECF No. 1. Summonses were issued on July 11, 2022. ECF Nos. 9–10. On July 19, 2022, plaintiff filed a copy of the summonses issued to HUD and Carlos,[8] and an affidavit of service signed by plaintiff stating that he served the summons on himself at 138-49 Elder Ave Apt

---

[7] The complaint was originally filed in the Southern District of New York and was transferred to this District on June 16, 2022. ECF Nos. 3–4.

[8] Defendant Carlos is named in the complaint as "Carlos, Queens Brai B'rith House Dev Manager." Compl. at 1, 4. The summons issued to defendant lists his service address as 138-49 Elder Ave, Flushing, NY 11355. ECF No. 11.

7N, Flushing, NY 11355, plaintiff's address. ECF No. 11. Plaintiff also attached two United States Postal Service mail receipts and a note stating that he mailed a "courtesy copy" of the complaint to the United States Attorney's Office in the Eastern District of New York and the Office of the Attorney General of the United States. Id.

HUD now moves to dismiss plaintiff's complaint against it for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to effect proper service pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 4(m).[9] ECF No. 29. Plaintiff opposes HUD's motion, ECF No. 25, and HUD has replied, ECF No. 30.[10]

## LEGAL STANDARD

I.    Standard of Review under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)

The standard of review for a motion to dismiss under Rules 12(b)(1) and 12(b)(6) are substantively identical. Moore v. PaineWebber, Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Yusim v. United States Dep't of Hous. & Urb. Dev., 409 F. Supp. 3d 125, 128 (E.D.N.Y. 2018) (citation and internal quotation marks omitted). On a motion to dismiss under 12(b)(1), however, the party invoking the Court's jurisdiction bears the burden of proof to show that subject matter jurisdiction exists, while the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (citing Makarova v. United States, 201 F.3d

---

[9] HUD also served pro se plaintiff with the requisite notices pursuant to Local Civil Rules 12.1 and 7.2. ECF Nos. 23–24.

[10] On November 2, 2022, attorney Jeffrey Chancas filed a notice of appearance for defendant Carlos and noted that defendant's full name is "Carlos Marrero." ECF No. 18. Mr. Chancas appeared on Mr. Marrero's behalf at the pre-motion conference on November 4, 2022. However, it is unclear whether Mr. Chancas is admitted to practice before this Court. While the Court's post-conference order states that defendant Carlos "must…request a pre-motion conference" if he "wants to file a motion to dismiss Mr. Xu's claims against him," defendant has not responded to the complaint.

110, 113 (2d Cir. 2000); McCray v. Lee, No. 16-CV-1730, 2017 WL 2275024, at *2 (S.D.N.Y. May 23, 2017).[11]

The Court must consider a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction before addressing any other motions. See Daly v. Citigroup Inc., 939 F.3d 415, 426 (2d Cir. 2019) (finding that if the complaint must be dismissed for lack of subject matter jurisdiction, defendant's other "defenses and objections become moot and do not need to be determined.").

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova, 201 F.3d at 113. A Rule 12(b)(1) motion is the proper vehicle both "for arguments that a defendant is protected by sovereign immunity, Wake v. United States, 89 F.3d 53, 57 (2d Cir. 1996), [as well as] that [a plaintiff lacks] standing to sue, Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n. 6 (2d Cir. 2006)…." New York v. U.S. Army Corps of Engineers, 896 F. Supp. 2d 180, 188 (E.D.N.Y. 2012). The Court may rely on evidence outside the pleadings in deciding a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.[12] Cortlandt St. Recovery Corp. v. Hellas Telecomms., 790 F.3d 411, 417 (2d Cir. 2015) (citing Makarova, 201 F.3d at 113). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F. 3d 697, 700–01 (2d Cir. 2000); Fed. R. Civ. P. 12(h)(3).

Under Rule 12(b)(6), a case is properly dismissed when the complaint fails to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) ("A claim has facial plausibility when the

---

[11] The Clerk of Court is directed to send plaintiff the attached copies of all the unreported cases cited herein.
[12] For this reason, the Court will consider the Declaration of Louis J. Gioia ("Gioia Decl.") [ECF No. 29-2], and attached exhibits included in defendant HUD's motion to dismiss.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Although all allegations in the complaint are accepted as true, "that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Mastafa v. Chevron Corp., 770 F.3d 170, 177 (2d Cir. 2014) (quoting Ashcroft, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 678.

In deciding a motion to dismiss under Rules 12(b)(1) and 12(b)(6), the Court has the "obligation to construe *pro se* complaints liberally, even as [it] examine[s] such complaints for factual allegations sufficient to meet the plausibility requirement." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted). "It is well-established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Meadows v. United Servs., Inc., 963 F.3d 240, 243 (2d Cir. 2020) (citations omitted). In addition to the complaint, the Court may consider documents attached to the complaint, documents incorporated by reference therein, or documents that the complaint "relies heavily upon" and are "integral" to the complaint, even if not incorporated by reference. Chambers v. Time Warner, Inc., 282 F.3d 157, 152–53 (2d Cir. 2002). The Court may also consider "factual allegations made by a *pro se* party in his papers opposing the motion" to dismiss. Antrobus v. City of New York, No. 19-CV-6277, 2021 WL 848786, at *3 (E.D.N.Y. Mar. 5, 2021) (citing Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

**DISCUSSION**

I.    Dismissal under Rule 12(b)(1)

    a.  Standing

Defendant moves to dismiss plaintiff's complaint on the grounds that this Court lacks subject matter jurisdiction, because plaintiff does not meet the standing requirement of Article III of the United States Constitution. Under Article III, the jurisdiction of federal courts is limited to deciding only "'Cases' or 'Controversies.'" Arizonans for Official English v. Arizona, 520 U.S. 43, 64 (1997) (citing U.S. Const. art. III, § 2, cl. 1). This constitutional limit on a federal court's power gives rise to the justiciability requirement of "standing." See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). If a plaintiff lacks standing to bring their claims, a federal court is deprived of subject-matter jurisdiction to adjudicate those claims. See New York v. U.S. Army Corps. of Engineers, 896 F.Supp.2d 180, 189 (E.D.N.Y. 2012) (considering the question of standing as one of subject-matter jurisdiction under Rule 12(b)(1)).

A plaintiff has standing to bring an action when they "demonstrate that [they have] suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 162 (1997) (quoting Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560–61 (1992)). "Injury in fact" means "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Donoghue v. Bulldog Investors General Partnership, 696 F.3d 170, 175 (2d Cir. 2012) (quoting Lujan, 504 U.S. at 560–61). "The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury." Rothstein v. UBS AG, 708 F.3d 82, 91 (2d Cir. 2013). Finally, a plaintiff must demonstrate that "'the likelihood that the relief requested, would

in principle, redress the alleged injury.'" Hoeffner v. D'Amato, 605 F. Supp. 3d 467, 476 (E.D.N.Y. 2022), reconsideration denied, No. 09-CV-3160, 2023 WL 2632501 (E.D.N.Y. Mar. 24, 2023) (quoting Heldman on Behalf of T.H. v. Sobol, 962 F.2d 148, 157 (2d Cir. 1992)).

Here, plaintiff describes his injury as his landlord charging him an unlawful increase in his rent. Compl. at 8. However, plaintiff does not assert any facts establishing a contractual or legally cognizable relationship between himself and HUD. [13] See Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n, 747 F.3d 44, 49 (2d Cir. 2014) ("Absent a contractual relationship there can be no contractual remedy." (citations and alterations omitted)); see also Roemer v. Williams, No. 19-CV-6855, 2020 WL 93892, at *2 (E.D.N.Y. Jan. 8, 2020), aff'd, 828 F. App'x 70 (2d Cir. 2020) (summary order) (finding plaintiff lacked standing where plaintiff had not sufficiently established a "legally cognizable relationship" with defendant.). Furthermore, plaintiff does not allege any conduct by HUD that could be fairly traceable to plaintiff's alleged injury. HUD states that it plays no role in determining plaintiff's rent and that since 2012, HDFC has been exclusively responsible for annually certifying plaintiff's income and calculating plaintiff's rent pursuant to the Use Agreement. Def.'s Mem. of Law at 8 [ECF No. 29-1]. Plaintiff does not allege the existence of some other contract, statute, or regulation that would make HUD responsible for calculating and collecting plaintiff's annual rent.

To meet the standing requirement of Article III, plaintiff's injury cannot be "the result of the independent action of some third party" not before this Court—in this case, HDFC. Sharpe v. Mental Health Sys. of U.S., 357 F. App'x 373, 375 (2d Cir. 2009) (summary order) (citing Lujan, 504 U.S. at 560). Indeed, plaintiff acknowledges that "the owner of the building" where he lives

---

[13] Plaintiff alleges that HUD policies provide that individuals over 62 years of age who "live in an apartment with controlled rent, and the monthly rent exceeds one-third of [their] income,…may be eligible to apply for rent increase exemption (SCRIE) for senior citizens." Plf.'s Opp. at 2–3. However, SCRIE is not a federal program run by HUD—it is a rental assistance program administered by New York City. See Def.'s Reply at 4 n.3 [ECF No. 30].

is "openly defy [*sic*] the relevant regulations[,]" and "implore[s] the government, the courts and the board of director of the building to intervene administratively."[14] Compl. at 12. Plaintiff fails to allege facts demonstrating HUD's involvement in plaintiff's rent increase. Therefore, plaintiff fails to allege a causal nexus between HUD and plaintiff's alleged injury. Alston v. Sebelius, No. 13-CV-4537, 2014 WL 4374644, at *8 (E.D.N.Y. Sept. 2, 2014) (dismissing plaintiff's claims for lack of standing pursuant to Rule 12(b)(1) because plaintiff failed to demonstrate how a particular defendant was directly involved in any actions allegedly resulting in plaintiff's injury). Accordingly, the Court should grant defendant's motion, and plaintiff's claims against HUD should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

     b.  Sovereign Immunity

     Even if plaintiff had demonstrated standing by showing a causal connection between his claims of injury and HUD, a department of the United States, plaintiff has not demonstrated that HUD waived its immunity as a sovereign entity. "The United States, as sovereign, is immune from suit unless it waives immunity and consents to be sued." Cooke v. United States, 918 F.3d 77, 81 (2d Cir. 2019) (citing United States v. Mitchell, 445 U.S. 535, 538 (1980)). As a general rule, a waiver of sovereign immunity must be consented to by Congress. Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999); see also Adeleke v. United States, 355 F.3d 144, 150 (2d Cir. 2004) (holding that "the United States may not be sued without its consent" and "the existence of consent is a prerequisite for jurisdiction." (quoting United States v. Mitchell, 463 U.S. 206, 212 (1983))).

---

[14] It is not clear whether plaintiff is seeking help to clear rent arrears and/or to have the landlord accept the Emergency Rental Assistance Program payment for which he was provisionally approved in September 2020. See Compl. at 8, and Plf.'s Opp. at 5. What is clear is that plaintiff would need to follow whatever the procedure is to recertify his income to obtain any "reduction" in his rent going forward. Compl. at 6.

     The Court has previously referred plaintiff to legal service providers who may be able to advise him on the alleged increase in his rent and his options for seeking rent relief. See ECF Orders dated November 4, 2022 and February 2, 2023. The Court strongly encourages plaintiff to contact the hotlines referred to in the Court's prior Orders as well as Met Council on Housing's Tenant Rights Hotline at 212-979-0611. See https://www.metcouncilonhousing.org/program/tenants-rights-hotline/ (listing the hotline's open hours).

A waiver of sovereign immunity "may not be inferred, but must be unequivocally expressed" in the statute's text. United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003) (citation and internal quotation marks omitted); Lane v. Pena, 518 U.S. 187, 192 (1996). Absent an unequivocal and express waiver of sovereign immunity, the Court lacks subject matter jurisdiction to hear a plaintiff's claim against the United States or its agencies. Tucker v. United States, No. 96-CV-6039, 1998 WL 708923, at *1 (E.D.N.Y. July 6, 1998) (citing Stout v. United States, 229 F.2d 918, 918 (2d Cir. 1956), cert. denied, 351 U.S. 982 (1956)).

Here, plaintiff brings his claims against HUD, a department of the United States. See 42 U.S.C. § 3531 et seq. Plaintiff alleges that HUD violated a "national policy" for low-income housing for the elderly but does not cite any statute articulating such a policy, let alone a statute evidencing Congress's intent to waive HUD's immunity from a lawsuit such as this. Compl. at 12; see United Am., Inc. v. N.B.C.-U.S.A. Hous., Inc. Twenty Seven, 400 F. Supp. 2d 59, 64 (D.D.C. 2005) (finding that Congress "expressly removed the waiver provision" previously relied on in the Second Circuit such that "there remains nothing in either the National Housing Act or the Housing Act of 1959, which waives the government's immunity from suit for actions" taken pursuant to Section 202).

Likewise, sovereign immunity bars plaintiff's claim of *non bis in idem*, which the Court construes as plaintiff's right not to be prosecuted twice for substantially the same crime under the Fifth Amendment's "Double Jeopardy Clause." United States v. Guevara, 443 F. App'x 641, 643 (2d Cir. 2011) (summary order) (noting that the term *non bis in idem* is "a principle of international law that is analogous to the Fifth Amendment's prohibition on double jeopardy."). This claim is not applicable to plaintiff's case, as this is a civil case, and the Double Jeopardy clause does not

apply outside of criminal proceedings.[15] <u>Porter v. Coughlin</u>, 421 F.3d 141, 145 (2d Cir. 2005) ("[T]he Double Jeopardy Clause 'protects only against the imposition of multiple *criminal* punishments for the same offense.'" (quoting <u>Hudson v. United States</u>, 552 U.S. 93, 99 (1997))).

Finally, plaintiff fails to demonstrate HUD's waiver of immunity for his Fifth Amendment due process claim. The Fifth Amendment's due process Clause requires notice and an opportunity to be heard. <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 546 (1985). Section 702 of the Administrative Procedure Act ("APA") provides a limited waiver of sovereign immunity for Fifth Amendment claims against the United States Government and its agencies where a plaintiff seeks relief other than monetary damages and alleges "'a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.'" <u>Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak</u>, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). However, the APA only authorizes judicial review of an "agency action" that is "final." <u>Lunney v. United States</u>, 319 F.3d 550, 554 (2d Cir. 2003) (citing 5 U.S.C. §§ 701(a), 704). The APA also requires a plaintiff to demonstrate that they have exhausted their administrative remedies and "there is no other adequate remedy in court." 5 U.S.C. § 704; <u>Shakhnes v. Berlin</u>, 689 F.3d 244, 260 (2d Cir. 2012) ("Under the [APA], courts may not review agency actions unless such actions are 'final.'" (citation omitted)).

Plaintiff has not alleged any 'agency action' by HUD , let alone a final agency action that would trigger the APA's limited waiver of sovereign immunity. <u>See, e.g.</u>, <u>Morales v. U.S. Dep't of Hous. & Urb. Dev.</u>, No. 3:21-CV-1171, 2022 WL 4237071, at *5 (D. Conn. Sept. 14, 2022) (dismissing plaintiff's complaint because plaintiff "has not adequately alleged an agency action or other failure to act as required by HUD."); <u>Knight v. U.S. Sec. & Exch. Comm'n</u>, No. 09-CV-

---

[15] Even if double jeopardy applied to civil proceedings, which it does not, plaintiff does not allege how double jeopardy would apply in this case regarding an increase in plaintiff's rent.

0015, 2009 WL 10701807, at *4 (E.D.N.Y. Dec. 16, 2009), aff'd sub nom. Knight v. U.S. S.E.C., 403 F. App'x 622 (summary order) (2d Cir. 2010) (finding that because plaintiff had not alleged a final agency action that harmed him "and for which there is no other adequate remedy available to him, the APA does not waive defendants' sovereign immunity in this case."). As discussed above, plaintiff acknowledges that his "landlord" is charging him the "full rent" and that the office manager of BBH, defendant Carlos, notified him of the rent increase in 2019. Compl. at 8; Plf.'s Reply at 2, 5–7. Plaintiff does not allege that HUD was involved in the decision to increase his rent.[16] Absent any final 'agency action' reviewable under the APA, plaintiff cannot invoke the APA's sovereign immunity waiver under Section 702.

Plaintiff fails to identify any other statutory basis for a waiver of HUD's sovereign immunity. HUD cannot waive immunity through its actions unless expressly authorized by Congress. United Am., Inc., 400 F. Supp. at 66. Accordingly, defendant's motion should be granted, as plaintiff's suit against HUD is barred by sovereign immunity, and the Court lacks subject matter jurisdiction over plaintiff's claims.

## II.    Claims against defendant Carlos

Although defendant Carlos has neither moved to dismiss nor otherwise responded to plaintiff's complaint, after reviewing the complaint and the parties' submissions in connection with the instant motion, I also recommend that the Court should *sua sponte* dismiss plaintiff's complaint against Carlos for lack of subject matter jurisdiction.

As with plaintiff's claims against HUD, plaintiff's claims against defendant Carlos have no basis in the law, and therefore plaintiff has no standing to assert his claims against Carlos before this Court. Plaintiff makes numerous allegations as to defendant's participation in "chang[ing] the

---

[16] The HUD handbook, which plaintiff references in his opposition to the instant motion, lays out the process for a tenant's annual recertification of income under Section 202, as well as the process for reinstating rental assistance if a tenant misses the annual deadline to recertify.

legal policy and charg[ing] me three thirds of the full rent!" Compl. at 8. He alleges that Carlos "is very uneducated" and "dared to ignore Article 202 of the Housing Act (housing assistance for the elderly)...." by charging "market price[.]" Plf.'s Opp. at 6. Plaintiff therefore alleges that in charging him full rent, Carlos violated his due process rights and the Double Jeopardy clause under the Fifth Amendment, as well as "national policy." However, the Fifth Amendment only applies to actions taken by the federal government. Rini v. Zwirn, 886 F. Supp. 270, 289 (E.D.N.Y. 1995). Plaintiff cannot allege that defendant Carlos violated his rights under the Fifth Amendment, because defendant Carlos is not the federal government. Plaintiff further lacks standing to bring any claims that defendant violated uncited "national policy." Plaintiff does not point to any statute by which Congress intended to confer standing to bring his individual claims. "[T]he inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of plaintiff." DMJ Assocs., L.L.C. v. Capasso, 288 F. Supp. 2d 262, 267 (E.D.N.Y. 2003) (quoting Sierra Club v. Morton, 405 U.S. 727 (1972)).

Even construing the complaint liberally, the Court cannot find any federal statutory basis for plaintiff's claims against Carlos. Whatever issues plaintiff may have with Carlos's intelligence or ignorance are not claims to be resolved by this Court. Plaintiff's claims against Carlos lack any federal law basis, and his complaint against Carlos should therefore be dismissed *sua sponte* for lack of subject matter jurisdiction.[17] Juliano v. Citigroup, 626 F. Supp. 2d 317, 318 (E.D.N.Y. 2009) ("[A] district court has an unflagging duty to raise the issue *sua sponte* whenever jurisdiction appears to be lacking."); Lopez v. Monarch Recovery Mgmt., Inc., No. 20-CV-3065, 2022 WL 4238623, at *2 (E.D.N.Y. Sept. 14, 2022) (dismissing plaintiff's case *sua sponte* for lack of subject

---

[17] Even if plaintiff were to name the HDFC or some other entity identified as plaintiff's landlord, the Court would still not have subject matter jurisdiction over plaintiff's claims. As noted earlier, see *supra* note 13, plaintiff is encouraged to consult a legal services provider who can advise him on the appropriate forum(s) or process(es) for reinstating the rental assistance he received in 2017.

matter jurisdiction, as plaintiff had not "asserted an injury in fact sufficient to establish Article III standing").[18]

III.     Leave to Amend

The Court is mindful that plaintiff is proceeding *pro se*. Although leave to amend a complaint should be freely given "when justice so requires" under Rule 15, the Court should deny leave to amend when it would be futile. Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002) (citation omitted); Fed. R. Civ. P. 15(a)(2). Because the Court lacks subject matter jurisdiction over plaintiff's claims against defendants, any amendment would be futile.  Therefore, I respectfully recommend that leave to amend should be denied.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that HUD's motion to dismiss plaintiff's claims against it for lack of subject matter jurisdiction should be granted. I further recommend that plaintiff's claims against defendant Carlos should also be dismissed *sua sponte* for lack of subject matter jurisdiction. Plaintiff's complaint should therefore be dismissed without prejudice.[19]

---

[18] Having determined that the Court lacks subject matter jurisdiction over plaintiff's claims against HUD pursuant to Rule 12(b)(1), the Court "has no occasion to reach [HUD's] dismissal under Rule 12(b)(6)." Kelen v. Nordstrom, Inc., 259 F. Supp. 3d 75, 82 (S.D.N.Y. 2016); Price v. Saugerties Cent. Sch. Dist., 305 Fed. App'x. 715, 717 (2d Cir. 2009) (summary order) (finding that because the plaintiffs lacked standing, the Court "need not reach the merits of plaintiffs' claim…"); Gladstein v. Goldfield, No. 18-CV-926, 2020 WL 4432927, at *12 (D. Conn. July 31, 2020) (same).

[19] If the Court had subject matter jurisdiction over plaintiff's claims, plaintiff would need to re-serve defendants, as plaintiff did not properly serve defendants under Federal Rule of Civil Procedure 4. First, plaintiff served the defendants himself, which is not allowed. Rule 4(c) requires that a copy of the summons and complaint be served on a defendant by "[a]ny person who is at least 18 years old and not a party" to the lawsuit. Fed. R. Civ. P. 4(c)(2). Rule 4(c)(2) explicitly prohibits a plaintiff from personally serving a defendant. Duan v. U.S. Citizenship & Immigr. Servs., No. 22-CV-1538, 2022 WL 2526896, at *1 (E.D.N.Y. July 6, 2022).

Here, the affidavit of service states that plaintiff served the summons on himself, not on HUD or on Carlos. ECF No. 11 at 3. Further, Mr. Chancas's brief appearance in this case as defendant Carlos's purported counsel, without further information, does not sufficiently demonstrate that defendant was properly served. Even if defendant were aware of the instant lawsuit filed against him, "actual notice of suit does not by itself cure a failure to comply with the statutory requirements for serving process." Sartor v. Toussaint, 70 F. App'x 11, 13 (2d Cir. 2002) (summary order); Tung v. Hemmings, No. 19-CV-5502, 2021 WL 4147419, at *4 (E.D.N.Y. Sept. 13, 2021) ("actual notice of a lawsuit does not cure improper service.").

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections must be made within the fourteen-day period.  Failure to file a timely objection to this Report generally waives any further judicial review.  Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: July 20, 2023
       Brooklyn, New York